## Appeal of RANDALL BROTHERS, INC.

Docket No. 1770. Decided July 20, 1926.

Bonuses paid employees in 1920 as additional compensation for services rendered in 1919 in lieu of increases in regular salaries, no legal obligation to the employees being incurred in 1919, are not deductible in 1919 as expenses incurred in that year.

Edward McCarthy, Esq., and W. A. Sutherland, Esq., for the petitioner.
Willis D. Nance, Esq., for the Commissioner.

Before Sternhagen, Green and Love.

The Commissioner determined a deficiency of $15,784.48 in income and profits taxes for the year 1919, arising from (1) the disallowance of deductions for additional compensation paid employees, and (2) the reduction of invested capital by the amount of income and profits taxes assessed on the income of 1918, prorated over the year 1919.

### FINDINGS OF FACT.

The petitioner is a Georgia corporation with its principal office in Atlanta. It was formed in May, 1918, by W. L. Randall and

P. H. Randall, brothers, who originally held all of the outstanding capital stock, consisting of 2,000 shares of $100 par value each. It was engaged in the wholesale and retail coal and lumber business in Atlanta. W. L. Randall was president and manager in charge of the coal department, and P. H. Randall was manager in charge of the lumber department. The directors were W. L. Randall, P. H. Randall, T. C. Burford, R. H. Jones, Jr., and H. T. Heery.

In 1918 the Randalls agreed to sell to certain employees and allotted to them a total of 165 shares of stock. These shares were not paid for by the employees and the certificates were not issued until after January 21, 1920, when the amount of bonuses or additional compensation here in question was paid.

At the meeting of the directors in January, 1919, T. C. Burford, the secretary and treasurer, was told by the Randalls that if the business during the year showed a good profit the employees would get a substantial bonus instead of raises in salaries; that this was going to be the policy of the company. The matter was again referred to two or three times during the year. Some of the other office employees were dissatisfied with their pay. During the spring and summer of that year one or the other of the Randalls had conversations with Kendrick, Heery, Snodgrass and Spinks, of the employees, in which he promised that they would receive additional pay or bonuses, depending on the profits of the business, instead of raises in salaries. The employees relied on these promises and refrained from seeking other employment.

W. L. Randall, the president, regarded his conversations with the various employees as committing the corporation to an obligation to divide 25 or 30 per cent of the profits at the end of the year among these employees. In this way it was thought that the corporation could pay additional compensation for the current year without establishing a new scale of salaries for the future.

The board of directors, at a regular meeting held January 21, 1920, adopted the following resolution:

That whereas, certain of the employees have from time to time asked for raises in their salaries and were deferred, and agreed to wait until the operations of the year were better determined by the annual audit, and,

Whereas, the condition of the company warrants same, and recognizing the enormous increase in the cost of living, be it therefore resolved, that additional compensation be paid as hereinafter stated to employees in the amounts set opposite their names, in consideration of the high cost of living, their untiring energies and faithful service during the past several years in the upbuilding of the company, as follows:

W. W. Snodgrass, $3,244.67; J. J. Taylor, $5,245.30; L. Kendrick, $3,244.67; H. T. Heery, $6,489.33; A. C. Spinks, $2,733.50; R. H. Jones, Jr., $1,622.33; T. C. Burford, $5,245.30; J. M. Christian, $100.00; J. A. Parks, $100.00; M. E. Law-

hon, $100.00; R. S. Pearson, $100.00; M. E. Patterson, $300.00; J. G. Cheek, $83.33; W. D. Bethea, $16.67; W. L. Patillo, $16.67; D. O. Cook, $25.00; O. B. Davenport, $100.00; R. E. Ellison, $75.00.

The petitioner also allowed bonuses to employees in the years 1918 and 1920.

The following table shows the amount of bonus paid to each salaried office employee, his regular salary, the number of shares of stock allotted to him, the years of service at 1919, and the bonuses paid for 1918 and 1920:

| Name | Position | Years of service | Regular salary | 1919 bonus | Shares of stock | Bonuses 1918 | Bonuses 1920 |
|------|----------|------------------|----------------|------------|-----------------|--------------|--------------|
| T. C. Burford | Secretary and Treasurer | 7-8 | $3,000 | $5,245.30 | 30 | $78.30 | $999.00 |
| R. H. Jones, jr. | Attorney | | 3,000 | 1,622.33 | 10 | 26.10 | |
| J. J. Taylor | Labor department | 7-8 | 3,000 | 5,245.30 | 30 | 78.30 | 999.50 |
| H. T. Heery | Asst. Secy. and Treas. | 24 | 2,750 | 6,489.33 | 40 | 104.40 | 1,332.00 |
| W. W. Snodgrass | Salesman and estimator | 5 | 3,000 | 3,244.67 | 20 | 52.20 | |
| L. Kendrick | Estimator | 12 | 1,800 | 3,244.67 | 20 | 52.20 | 666.00 |
| A. C. Spinks | In charge coal sales | 10 | 2,400 | 2,733.50 | 15 | 39.15 | 500.25 |
| | | | | 27,825.10 | 165 | | |

These were the more valuable employees of the petitioner. They received no substantial increases in salaries in 1919 or 1920—such increases as there were did not exceed $25 a month, except that one employee may have received $50 a month.

The Randalls were not formally authorized by the board of directors to make an arrangement with the employees for additional compensation. The directors and stockholders were in constant consultation with each other and it was agreed informally that the Randalls should make such an arrangement.

The secretary prepared approximate statements in July and December 1919 for the purpose of determining what bonus was to be paid. The amounts were determined either the last of December, 1919, or the first of January, 1920, and they were paid on or about January 21, 1920. They were recorded on the books as an expense for 1919 before closing the books for the year, the entry being made in the regular course of business after January 21, 1920, but as of December 31, 1919.

The net income for 1919 determined by the Commissioner, without allowing deduction for bonuses, was $101,130.70. The year 1919 was a year of heavy business; prices were better and there was more profit in every article. The company's gross sales for 1918 were about $800,000; for 1919, $1,289,752.67; for 1920, about $1,400,000. The net income determined by the Commissioner for 1918 was $36,086.37.

The gross sales by months during the year 1919 as taken from the merchandise account were as follows:

| | |
|---|---|
| January | $81, 632. 49 |
| February | 86, 368. 51 |
| March | 98, 596. 19 |
| April | 86, 714. 41 |
| May | 104, 244. 13 |
| June | 100, 739. 33 |
| July | 126, 737. 65 |
| August | 132, 093. 14 |
| September | 106, 635. 72 |
| October | 130, 177. 41 |
| November | 127, 557. 49 |
| December | 108, 256. 20 |
| | 1, 289, 752. 67 |

No dividends were paid by the company in 1919. The minutes of annual directors' meetings in January, 1921, and January, 1922, indicate the company declared regular annual dividends only when the amount of its surplus account equaled or exceeded the amount of its capital stock.

The 1918 income and profits taxes amounted to $14,383.98. The current earnings in 1919 were sufficient to pay in this year the 1918 taxes without drawing upon previously accumulated surplus and undivided profits. In computing net income for 1919 the Commissioner did not allow any deduction for the sum of $27,825.15 paid the officers as 1919 bonus, and reduced invested capital by the amount of the income and profits tax for 1918, prorated over the year 1919.

OPINION.

PHILLIPS: The contention of the taxpayer with reference to the computation of its invested capital must, under the provisions of section 1207 of the Revenue Act of 1926, be decided adversely to it. *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168.

The remaining question is whether the additional amounts paid to employees by the petitioner in January, 1920, may be deducted in computing the net income for 1919. There is nothing in the record from which we may doubt the reasonableness of the deduction claimed. While the bonus is distributed among these employees in the same percentage as their stockholdings, the testimony discloses that the amount of stock which each employee was allowed to purchase was determined upon what was considered to be the value of his services to the corporation and the distribution of the bonus was made upon the same basis. It will also be noted that these employees own 165 shares of a total of 2,000 shares outstanding,

the balance being owned by the two Randalls, who did not share in the bonus.

The Revenue Act of 1918 provides for the deduction of:

All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered.

It appearing that the bonus was a reasonable allowance for compensation for personal services actually rendered, it becomes necessary to determine whether these payments were incurred during the taxable year.

The testimony is that these employees were dissatisfied with the salary that was being paid to them and were in a position to procure employment elsewhere at an increased salary, that this situation was communicated to the two principal stockholders during 1919, and that during that year they made promises to distribute a bonus among these employees if the business warranted. L. Kendrick testified that sometime during the year 1919 he spoke with P. H. Randall and states the substance of the agreement to be:

That I was to receive extra pay. At that time business was in such a condition with everything going up, the cost of living and everything, and he agreed with me, if I would stay with him, that he would see, if the business made anything, that I would get extra pay according to what the business made.

W. L. Randall testified:

They were dissatisfied with the amount of pay they were getting for the services they were rendering and we wanted to retain their services, and I agreed with them verbally that we would allow them 25 or 30 per cent of the net earnings of the business that year, to be divided among all the employees of both the coal and lumber departments.  *  *  *

Q. Do I understand from you that, in the event an employee had ceased working from December 31, 1919, he would still have had a claim against your company?

A. If he had worked up through the year. I do not think though that that was brought into the agreement. Nobody didn't expect that they would leave, but if they left right immediately, of course, they would not have participated in any of the gains.

H. T. Heery testified concerning a conversation with T. H. Randall:

Well, he agreed to see that we got an additional wage or bonus provided the business would allow it.

W. W. Snodgrass testified with reference to 1919:

Mr. P. H. Randall and myself talked the matters over. I worked on a commission basis strictly, and business was very plentiful in my particular line, and I had a fixed rate of commission. Rather than increase my commission, the rate we agreed on was that we would see how business

turned out at the end of the year.  Mr. Randall said he would treat me right in regard to it.  * * *

Q. Did Mr. Randall say anything to you about paying you any percentage of the profits, paying employees any percentage of the profits?

A. No, sir.  I don't think there was anything like that said * * *.  He said he would treat us right; that I would not have any reason to complain.

Q. You always found him a man that lived up to what he says?

A. Yes, sir, absolutely, both of them.

Q. Did you or not feel sure after the conversation that you would be treated as well as the business justified?

A. Yes, sir, I was perfectly satisfied.

A. C. Spinks testified concerning a conversation with W. L. Randall during 1919 as follows:

I told Mr. Randall that I felt like I was worth more money than the amount he was paying me; that I was handling a larger volume of business; that I had been with him some time; and that higher salaries were being paid to almost everybody in every line; I felt like I was due more money.  Mr. Randall assured me he would take care of me.  Knowing Mr. Randall like I did, I knew he would do it.  * * *

Q. As I understand your testimony, there was no specific amount stated at this time in the spring of 1919?

A. No.

Q. Merely that Mr. Randall would treat you right, or something to that effect?

A. That's right.

T. C. Burford testified with reference to his knowledge concerning the bonus:

It was during the latter part of January, 1919, at the first directors' meeting that was held in that year, which meeting was the final meeting covering 1918 business.  I was told that if the business showed a profit worth while during the year that instead of a raise of salary I would get a substantial bonus; that that was going to be more or less the policy of the company rather than to increase salaries.  * * *  In my conferences with the president, W. L. Randall, the matter, as well as I remember, was referred to, I would say, some two or three different times during the year, and the sum and substance of the conversation regarding it was substantially what he said to me in the previous meeting; the meeting at the first of the year.

One witness testifies that the agreement was to distribute between 25 per cent and 30 per cent of the profits of the business as a bonus.  On the other hand, we have no such testimony from any of the other witnesses, all of whom indicate that the amount to be distributed was extremely indefinite and to all practical intents and purposes was to be determined by the two Randalls.  Two of such witnesses deny that there was any agreement as to the amount or percentage of the profits to be distributed.  We do not believe that in such circumstances any legally enforcible obligation to the employees had been incurred.  Neither the amount to be paid each employee, the total amount or percentage of the profits to be dis-

tributed as a bonus among all employees, nor the proration among the employees of the amount finally determined, had been agreed upon.

Counsel for the taxpayer cite several instances where agreements to pay additional compensation or bonus have been upheld by the courts, but in each such instance there was an agreement sufficiently definite to fix the compensation or the manner of computing the compensation. Here we have neither. It is true that there was a moral obligation, but even this obligation was so indefinite that its interpretation depended upon the understanding and good business judgment of the two Randalls.

It is urged that these persons had been associated for many years, that the agreement was as definite as amicable business relations required, and that under such circumstances the solemn and binding effect of the understanding must be recognized to the same extent. as the parties themselves were willing to recognize it. There is much merit in the suggestion, which was fully considered by the Board at the time of its decision in the *Appeal of Van De Kamps Holland Dutch Bakers*, 2 B. T. A. 1247. The Board then reached the conclusion that compensation for services is deductible only in the year in which a legal obligation is incurred, and we believe the decision in that appeal covers the decision in this. *Appeal of Arter Paint & Glass Co.*, 2 B. T. A. 1256.

> *The deficiency is redetermined to be $15,-784.48. Order of redetermination will be entered accordingly.*

STERNHAGEN, dissenting: While this is a close case, upon which I recognize room for difference of opinion, it seems to me that the petitioner has brought itself within the statute as having incurred the expense of these additional salaries in 1919. It was in that year that the employees were threatening to quit, that the managers promised them greater compensation, that the employees acted on the promise, and that the earnings were derived from which the added compensation was to be paid and the promise kept. The expense was incurred at once and the details of it were to be worked out later. This was enough for everyone concerned to recognize as binding and to act upon, and the employees acted upon it in 1919 by carrying on. The obligation was as real to these amicable associates in 1919 as if it were written. Its existence in that year is not in my opinion made less effective for tax purposes by reason of the fact, if it be true, that it could not be enforced until after the close of the year.

GREEN, LANSDON, and TRUSSELL concur in this dissent.